IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KRISHNA LYNN GREEN,

      Plaintiff,

v.                                                            Civ. No. 22-42 GBW

KILOLO KIJAKAZI, *Acting*
*Commissioner of the Social Security*
*Administration*,

      Defendant.

## ORDER DENYING REMAND

THIS MATTER comes before the Court on Plaintiff's Motion to Remand the

Social Security Agency ("SSA") decision finding that Plaintiff's disability ceased on

April 4, 2016. *Doc. 22.* For the reasons explained below, the Court DENIES Plaintiff's

motion and AFFIRMS the judgment of the SSA.

### I.  PROCEDURAL HISTORY

On December 8, 2011, a SSA Administrative Law Judge (ALJ) found Plaintiff

disabled beginning January 1, 2009, and approved her application for SSDI and SSI.

Administrative Record ("AR") at 156, 167.  On April 4, 2016, the SSA determined

through its continuing disability review process that Plaintiff's disability ceased on

April 4, 2016, due to medical improvement.  AR at 170, 174.  Plaintiff filed a request for

reconsideration, *see* AR at 175, and the disability cessation determination was upheld on

reconsideration on September 7, 2017, AR at 199.  On January 15, 2019, a hearing was

held by an ALJ.  AR at 107-55.  The ALJ issued an unfavorable decision on February 20,

2019.  AR at 41, 57.  Plaintiff sought review from the Appeals Council, which denied

review on December 23, 2019, AR at 21, making the ALJ's denial the Commissioner's

final decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

On January 20, 2022, Plaintiff filed suit in this Court, seeking review and reversal

of the ALJ's disability cessation decision.  *See doc. 1.*  On July 16, 2022, Plaintiff filed her

Motion to Reverse and Remand, With Supporting Memorandum.  *See doc. 22.*  The

Commissioner responded on October 13, 2022.  *See doc. 26.*  The Motion is fully briefed

and ready for decision.  *See doc. 27.*

## II.   STANDARD OF REVIEW

Courts review initial denials of benefits and terminations of benefits under the

same standard of review.  *See Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner

only to determine whether it (1) is supported by "substantial evidence" and (2)

comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*, 933

F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, [the Court] neither

reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."  *Bowman*

*v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.2d at 800 (internal quotation marks omitted).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id.* at 1010.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III.    ALJ EVALUATION

#### A.  Legal Standard

For purposes of Supplemental Security Income, an individual is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Social Security Act (the Act) provides that the Commissioner shall review disability cases to determine continuing eligibility.

3

42 U.S.C. § 421(i).  The Commissioner may terminate the benefits of an individual

previously found to be disabled under the Act upon finding that the physical or mental

impairment(s) that provided the basis for the disability finding "has ceased, does not

exist, or is not disabling."  *See* 42 U.S.C. § 423(f).

The SSA has developed an eight-step, sequential test for determining whether

the termination of DIB benefits is appropriate, and a seven-step, sequential test for

determining whether the termination of SSI benefits is appropriate.  *See* 20 C.F.R. §§

404.1594(f) (setting forth the steps for DIB) and 416.994(b)(5) (setting forth the steps for

SSI).  The tests are "virtually identical," *Newbold v. Colvin*, 718 F.3d 1257, 1261 n.2 (10th

Cir. 2013), except that the first step of the DIB evaluation—which asks whether a

claimant is currently engaged in substantial gainful activity—is not part of the SSI

evaluation.  *Compare* 20 C.F.R. § 404.1594(f) *with* 20 C.F.R. § 416.994(b)(5).  The

remaining shared steps are as follows[1]:

> (1) Does the claimant have an impairment or combination of impairments which meets or equals the severity of a listed impairment?
>
> (2) If not, has there been medical improvement as defined by 20 C.F.R. § 404.1594(b)(1)?
>
> (3) If there has been medical improvement, does the improvement relate to the claimant's ability to do work, *i.e.*, has there been an increase in the claimant's RFC based on the impairment(s) present on the date of the most recent favorable medical determination?

---

[1] For brevity, the Court hereinafter only cites the regulations related to DIB in Part 404 of Title 20 of the Code of Federal Regulations and omits parallel citations related to SSI in Part 416 of Title 20 of the Code of Federal Regulations, which also apply.

(4) If there has been no medical improvement, or if such improvement is not related to claimant's ability to work, do any of the exceptions to medical improvement apply? *See* 20 C.F.R. §§ 404.1594(d)-(e) (list of potential exceptions).

(5) If there is medical improvement related to the claimant's ability to work, are the claimant's current impairments severe when considered in combination?

(6) If the claimant's impairments are severe, does the claimant retain the ability to perform his or her past relevant work?

(7) If the claimant's impairments are severe and the claimant cannot perform his or her past relevant work, does the claimant nevertheless possess the RFC to perform other work?

*See* 20 C.F.R. § 404.1594(f). During the test, the burden of proof is on the Commissioner to show medical improvement "by establishing that the claimant's medical condition has improved, the improvement is related to the claimant's ability to work, and the claimant is currently able to engage in substantial gainful activity." *Knapp v. Barnhart*, 68 F. App'x 951, 952 (10th Cir. 2003) (citing *Glenn*, 21 F.3d at 987).

## B. The ALJ's Decision

In a decision dated December 8, 2011, an ALJ found Plaintiff to be disabled beginning on January 1, 2009, due to her "degenerative disc disease of the cervical spine and lumbar spine, chronic pain syndrome, cognitive disorder, and depression," which, in combination, limited her to a "less than sedentary residual functional capacity." AR at 161, 163-164. On February 20, 2019, the ALJ issued a decision finding that Plaintiff's disability had ceased as of April 4, 2016. *See* AR at 41, 57. In determining that Plaintiff's

disability had ceased, the ALJ applied the eight-step sequential analysis.  AR at 46-55.

The ALJ identified the December 8, 2011, decision the "comparison point decision"

(CPD), as it was the most recent favorable medical decision finding Plaintiff disabled.

AR at 46.  At step one, the ALJ found that Plaintiff "ha[d] not engaged in substantial

gainful activity" since the CPD.  *Id.*  At step two, he found that Plaintiff had the

following severe impairments: "major depressive disorder, anxiety disorder, cognitive

disorder, degenerative disc disease of the lumbar and cervical spine, chronic pain

disorder, and fibromyalgia," and that the "additional severe impairments of

fibromyalgia and anxiety disorder do not result in additional mental or physical

limitations separate from the limitations caused by the impairments identified in the

CPD."  *Id.*  The ALJ further found that "[s]ince April 4, 2016, the claimant has not had

an impairment or combination of impairments which met or medically equaled the

severity of an impairment" in the Listings.  AR at 46-48.

At step three, the ALJ found that medical improvement occurred on April 4,

2016, due to a decrease in the severity of Plaintiff's impairments.  AR at 48.  At steps

four and six, the ALJ found that Plaintiff continued to have a severe impairment or

combination of impairments since April 4, 2016, and that Plaintiff's RFC was less

restrictive than her RFC at the time of the CPD.  *See* AR at 55.  In particular, the ALJ

found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §

404.1567(b), subject to several physical and mental limitations.  With respect to physical limitations, the ALJ found that Plaintiff could frequently climb ramps and stairs, crouch, kneel, and crawl; occasionally stoop; and never climb ladders, ropes, or scaffolds.  AR at 48-49.  Additionally, the ALJ found that Plaintiff must avoid even occasional use of moving and/or dangerous machinery and even occasional exposure to unprotected heights.  AR at 49.

With respect to mental limitations, the ALJ found that Plaintiff is limited to work that consists of simple, routine, and repetitive tasks; requires fast-paced production work no more than frequently; and requires simple workplace changes no more than frequently.  AR at 49.  He further found that Plaintiff is able to maintain sufficient attention and concentration for extended periods of two-hour segments during a normal workday with normal work breaks, but only in work that consists of no more than simple, routine, and repetitive tasks.  *Id.*  Finally, the ALJ found that Plaintiff is limited to work that requires no more than occasional interaction with the public and co-workers, and to work that requires no more than occasional supervision (*i.e.*, a supervisor's critical checking of Plaintiff's work).  *Id.*

In making these findings, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and

limiting effects of her symptoms were not entirely consistent with the objective medical and other evidence in the record.  AR at 50, 52.  In particular, the ALJ found Plaintiff's alleged symptoms inconsistent with Plaintiff's relative lack of medical treatment since the disability cessation date; objective clinical findings showing that Plaintiff demonstrated normal functioning; Plaintiff's reported activities of daily living; and opinion evidence from state agency consultants Dr. David McCarty, Dr. Mark Werner, Dr. Molly McClain, Dr. James Sturgis, Dr. Cathy Simutis, and Dr. David Benson.  AR at 52-54.  The ALJ gave significant weight to Dr. McCarty's and Dr. Warner's opinions; some weight to Dr. McClain's opinion; minimal weight to Dr. Sturgis's and Dr. Simutis's opinions; some weight to Dr. Benson's opinion; and minimal weight to the opinion of Dr. Akins, an impartial medical expert who appeared at the January 15, 2019 hearing.  AR at 53-54.

Based on Plaintiff's RFC, the ALJ found at step seven that Plaintiff has been unable to perform her past relevant work as a bookkeeper (Dictionary of Occupational Titles (DOT) 210.382-014) since the date of disability cessation.  *See* AR at 55.  At step eight, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that since April 4, 2026, Plaintiff could perform jobs that exist in significant numbers in the national economy.  AR at 55-56.  Specifically, the ALJ found that Plaintiff's RFC would have permitted her to perform the requirements of three

representative occupations: (1) mail clerk, non-postal (DOT 209.687-026); (2) food prep

(DOT 319.484-010); and (3) housekeeping cleaner (DOT 323.687-014).  AR at 56.

Accordingly, the ALJ concluded that Plaintiff's disability (as the Social Security

Administration defines the term) ended on April 4, 2016, and Plaintiff has not become

disabled again since that date.  AR at 57.

## IV.  ANALYSIS

Plaintiff asserts five points of error.  First, Plaintiff argues that the ALJ erred by

failing to "properly consider" whether Plaintiff was capable of making an informed

choice to waive the right to representation.  *Doc. 22* at 19-21.  Second, Plaintiff argues

that the Appeals Council erred by declining to review her case despite her submission

of additional evidence related to her March 13, 2019, office visit at Guadalupe Health

Center.  *Id.* at 21-23.  Third, Plaintiff argues that the ALJ erred by failing to incorporate

her moderate mental limitations into her RFC.  *Id.* at 23-25.  Fourth, Plaintiff argues that

the ALJ improperly evaluated medical opinion evidence by rejecting portions of Dr.

Benson's and Dr. McClain's opinions and by giving minimal weight to Dr. Akins's

opinion.  *Id.* at 25-26.  Fifth, and finally, Plaintiff argues that the ALJ improperly

discounted Plaintiff's symptom allegations.  *Id.* at *26-27*.  Defendant contests each of

these arguments.  *See generally doc. 26*.  Ultimately, the Court finds that the ALJ obtained

a valid waiver of Plaintiff's right to representation from Plaintiff, the Appeals Council

did not err in failing to review Plaintiff's case in light of her later-submitted evidence, and the ALJ's RFC finding is supported by substantial evidence.  As a result, the Court affirms the Commissioner's decision.

### A.  The ALJ Obtained a Valid Waiver of Plaintiff's Right to Representation

First, Plaintiff argues that the ALJ failed to obtain a valid waiver from Plaintiff of her right to representation at the January 15, 2019, hearing on the cessation of Plaintiff's benefits because "[Plaintiff's] impairments prevented her from being able to make [sic] informed consent and the ALJ had a vast record supporting that she would have benefitted from the assistance of appropriate representation."  *See doc. 22* at 21.  42 U.S.C. § 406 and SSA regulations require the SSA to include written notices that advise claimants of their options for obtaining an attorney, including the availability of legal services organizations, with notices of adverse determinations.  42 U.S.C. § 406; 20 C.F.R. § 404.1707.  Additionally, the SSA's Hearings, Appeals and Litigation Law Manual ("HALLEX") instructs ALJs to advise unrepresented claimants of their right to representation at administrative hearings.  SSA, HALLEX I-2-6-52(B).[2]  In advising an unrepresented claimant about the right to representation, an ALJ must "ensure that the claimant is aware of his or her options for representation[] and discuss access to organizations that assist individuals in obtaining representation."  SSA, HALLEX I-2-1-

---

[2] Accessible at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-52.html.

80(B)(1).[3]  The HALLEX also provides that "[i]f [a] claimant decides to waive the right to representation, the ALJ must determine whether the claimant is capable of making an informed choice to waive the right to representation," and "[i]f . . . satisfied that the claimant can make an informed decision, . . . secure from the claimant a verbal waiver on-the-record or a written waiver."  *Id.*  But, the ALJ is "not required to ask the claimant any specific questions regarding the right to representation."  *Id.*

In the Tenth Circuit, a claimant is sufficiently advised of her right to representation where the record shows that the claimant was sent notice before a hearing that explained the claimant's rights to counsel, and the claimant appeared at the hearing and explicitly waived her right to representation.  *Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996); *Gill v. Shalala*, 5 F.3d 545 (10th Cir. 1993) (unpublished table decision).  Here, the record reflects that Plaintiff was advised of her right to representation by the Notice of Disability Cessation dated April 4, 2016, AR at 172; the Reconsideration Notice dated September 8, 2017, AR at 203; Request for Hearing Acknowledgement Letter dated January 19, 2018, AR at 214, 217-20; and Amended Notice of Hearing dated November 13, 2018, AR at 245, 252-53.  Plaintiff appeared at the January 15, 2019, hearing, and confirmed that she had received the Request for Hearing Acknowledgement Letter informing her of her right to representation and providing

---

[3] Accessible at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-1-80.html#i-2-1-80-b-1.

her with phone numbers of offices that may have been able to assist her with finding a representative. AR at 110. After hearing additional information from the ALJ concerning representatives' fees and potential merits of hiring a representative, Plaintiff twice explicitly waived her right to representation. AR at 111-12. Under Tenth Circuit case law, the Act, and SSA regulations, no more was required.

In addition, the Court disagrees with Plaintiff's arguments that the ALJ either failed to find that Plaintiff was capable of giving informed consent, or that the ALJ lacked substantial evidence to determine that Plaintiff was capable of giving informed consent. First, the Court finds no support in the Act, SSA regulations, or the HALLEX for the proposition that an ALJ must make an explicit finding concerning whether a Plaintiff is capable of giving informed consent or that such a finding must be supported by substantial evidence. The HALLEX provision on point merely requires the ALJ to "determine whether the claimant is making an informed choice" and "satisf[y]" him or herself that the claimant can make an informed decision. SSA, HALLEX I-2-1-80(B)(1). Here, the ALJ engaged in extended colloquy with Plaintiff concerning Plaintiff's understanding of her right to representation and willingness to go forward *pro se* anyway, obtained Plaintiff's express verbal agreement to move forward without a representative, informed Plaintiff that she could ask questions of the ALJ during the hearing, and gave Plaintiff an opportunity to cross-examine Dr. Akins and the

vocational expert.  *See* AR at 109-54.  Then, in his post-hearing decision, the ALJ

explicitly found that Plaintiff gave informed consent.  AR at 44 ("Although informed of

the right to representation, the claimant chose to appear and testify without the

assistance of an attorney or other representative.").  Based on the foregoing, the Court

finds no indication that the ALJ failed to determine that Plaintiff was capable of giving

informed consent, or that the ALJ's determination was legally erroneous.

### B.  The Appeals Council Did Not Err in Denying Review

Plaintiff next argues that the SSA Appeals Council (AC) erred when it found that

additional evidence submitted by Plaintiff did not constitute grounds to review the

ALJ's decision finding that Plaintiff's disability had ceased.  *See doc. 22* at 21-23.

Plaintiff argues that because the additional evidence reflected that Plaintiff had received

treatment for chronic pain and her personality disorder, the evidence would have cut

against the ALJ's discounting of Plaintiff's subjective symptom allegations due to

Plaintiff's lack of treatment.  *Id.* at 23.

When a claimant submits additional evidence with a request for Appeals

Counsel review, the AC must determine if the claimant meets one of the good cause

exceptions in 20 C.F.R. § 404.970(b) for not informing the AC about the evidence or

submitting it with the claimant's request for a hearing.[4]  SSA, HALLEX I-3-3-6(A).[5]  If a

claimant shows good cause, then the AC will evaluate the additional evidence.  *Id.*  If

the result of the AC's evaluation is that the AC finds the additional evidence to be

"new, material, and relates to the period on or before the date of the hearing decision,

and if there is a reasonable probability that the additional evidence will change the

outcome of the decision," the AC will review the case on the basis of the new evidence.

*Id.*  The Court reviews *de novo* an AC decision to reject new evidence because it is not

"(1) new, (2) material, and (3) related to the period on or before the date of the ALJ's

decision."  *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).

    Here, Plaintiff submitted three pieces of evidence in support of her request for

AC review: (1) documentation from "Valley Wide" related to Plaintiff's March 13, 2019,

---

[4] The 'good cause' exceptions in 20 C.F.R. § 404.970 are:
>    (1) Our action misled you;
>    (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>    (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
>>        (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
>>        (ii) There was a death or serious illness in your immediate family;
>>        (iii) Important records were destroyed or damaged by fire or other accidental cause;
>>        (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or
>>        (v) You received a hearing level decision on the record and the Appeals Council reviewed your decision.

20 C.F.R. § 404.970(b).

[5] Available at https://www.ssa.gov/OP_Home/hallex/I-03/I-3-3-6.html; 20 C.F.R. § 404.970(b).

visit to Guadalupe Health Center to be seen for musculoskeletal pain, *see* AR at 32, and

her referral from that visit to a behavioral health consultant for "diet and nutrition

help" on April 23, 2019, AR at 35; (2) a form titled "Med-9 Instructions for the Client"

issued by the Colorado Department of Human Services for applicants to the Aid to the

Needy Disabled (AND) Program that Plaintiff completed on August 26, 2019, AR at 28-

29; and (3) a Progress Note from Plaintiff's August 14, 2019, visit to San Luis Valley

Behavioral Health Group, AR at 26-27.  The AC declined to review Plaintiff's case on

the basis of the second and third pieces of evidence she submitted (*i.e.*, the Colorado

Department of Human Services form dated August 8, 2019, and the Behavioral Health

Group progress note dated August 14, 2019) because the evidence post-dated the ALJ's

decision and therefore did not relate to the time period addressed by the ALJ's decision.

*See* AR at 22.  Plaintiff does not dispute that these pieces of evidence post-date the ALJ's

decision, which was issued on February 20, 2019, *see* AR at 57, by approximately six

months, *see generally doc. 22* at 21-23.  Nor does Plaintiff argue that this evidence is

chronologically pertinent to the time period adjudicated by the ALJ.  *See* SSA, HALLEX

I-3-3-6(B) ("Additional evidence relates to the period on or before the date of the

hearing decision if the evidence . . . post-dates the hearing decision but is reasonably

related to the time period adjudicated in the hearing decision.").  As Plaintiff has not

meaningfully disputed the basis for the AC's decision to not review these pieces of

evidence, and that basis is well-grounded in the applicable legal standards, the Court finds that the AC did not err in declining to consider this new evidence. *See Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009) (stating that failure to support a contention with "developed argumentation" waives that issue on appeal (quoting *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir.2004))).

Having disposed of the arguments related to the second and third pieces of additional evidence submitted by Plaintiff, the Court turns to the first set of evidence submitted by Plaintiff, which was evidence from "Valley Wide" dated March 13, 2019 through April 23, 2019. *See* AR at 32-41.  The AC declined to review this evidence because it "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision."  AR at 22.  Plaintiff argues that this evidence undercuts the ALJ's finding that Plaintiff's subjective symptom allegations were inconsistent with the record because of Plaintiff's "lack of appreciable treatment during the adjudicative period" and supports "[Plaintiff's] diagnosis of a personality disorder and her ongoing disability." *Doc. 22* at 23 (quoting AR at 48, 50, 52).

The evidence in question shows that on March 13, 2019, Plaintiff was seen by a Physician's Assistant, Michael Henderson, at Guadalupe Health Center for "depression," "feeling of unreality," "chronic back pain," and an adult BMI between 29.0 and 29.9.  *See* AR at 32-33.  Mr. Henderson indicated in his treatment notes that

16

Plaintiff presented as "[t]earful and c/o Medicare hearing withdrawing her disability benefits" and was "[n]ot interested in therapy or rehab," as she "seem[ed] to only be interested in disability benefits." *Id.* The evidence further indicates that Mr. Henderson referred Plaintiff to counseling for "diet and nutrition help," and that Plaintiff attended a counseling appointment on April 23, 2019. AR at 35. There, Plaintiff underwent a mental status exam and was diagnosed with unspecified personality disorder and moderate limitation in her daily functioning. *See* AR at 38, 40.

Upon *de novo* review, the Court finds that the AC correctly determined that this evidence did not show a reasonable probability of changing the outcome of the ALJ's decision. Although it is true that the evidence shows Plaintiff receiving medical treatment following the date of her disability cessation, and the ALJ relied on Plaintiff's lack of medical treatment since April 4, 2016, when weighing medical opinion testimony and Plaintiff's subjective symptom allegations, the evidence does not forcefully undermine the ALJ's finding that Plaintiff had generally not received medical treatment since the disability cessation date because Mr. Henderson noted that Plaintiff was "not interested in therapy or rehab" for her back pain. *See* AR at 33, 52-53. Additionally, it is not immediately clear how the March 13 or April 23, 2019, treatment notes would have resulted in a more restrictive RFC finding than the one assessed by the ALJ, because the ALJ determined that the medical evidence showed that Plaintiff's

severe impairments included degenerative disease of the lumbar and cervical spine, and

the record before the ALJ included a diagnosis of personality disorder.  *See* AR at 46,

742.  Therefore, the Court finds that the AC's decision to not review or exhibit this

evidence was not erroneous.

### C.  The RFC Finding is Supported by Substantial Evidence

Plaintiff's final three points of error all amount to challenges to whether the

ALJ's RFC finding is supported by substantial evidence based on how the ALJ

incorporated Plaintiff's mental limitations in her RFC, assessed medical opinion

testimony, and considered Plaintiff's subjective symptom testimony.  The Court

addresses these aspects of the ALJ's analysis in turn.

### i.   *Mental RFC*

During an ALJ's RFC analysis, the ALJ assesses at steps two and three[6] whether

a claimant has a severe impairment and whether the impairment meets or equals a

listed impairment.  For mental impairments, the ALJ determines whether an

individual's mental impairments meet or medically equal the criteria for a mental

disorder listing in part by "assess[ing] [the] individual's limitations and restrictions

from a mental impairment(s) in categories identified in the 'paragraph B' and

---

[6] The Court's reference to "steps two and three" in this context is a reference to steps of the sequential process for assessing residual functional capacity in initial claims, *see* 20 C.F.R. § 404.1520(a)(4), as opposed to steps two and three of the eight-step process for disability review, *see* 20 C.F.R. § 404.1594(f)

'paragraph C' criteria of the adult mental disorder listings." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  Paragraph B criteria "represent the areas of mental functioning a person uses in a work setting," include "interact[ing] with others" and "concentrat[ing], persist[ing], or maintain[ing] pace," and are evaluated "on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation."  20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.00.F.2.

By contrast, at step four, the ALJ determines the claimant's RFC—"the most [she] can still do despite [physical and mental] limitations," 20 C.F.R. § 404.1545(a)(1)—in light of "all of the relevant medical and other evidence," *id.* § 404.1545(a)(3).  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . ."  SSR 96-8p, 1996 WL 374184, at *4; *see also id.* at *2 ("[T]he RFC is a "function-by-function assessment.").

A "finding of a moderate limitation . . . at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."  *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).  Indeed, the Tenth Circuit has cautioned on several occasions—albeit in unpublished opinions—that the ALJ has no obligation to incorporate limitations found in paragraph B criteria at step

three into his RFC determination at step four. *See DeFalco-Miller v. Colvin*, 520 F. App'x 741, 747-48 (10th Cir. 2013); *Suttles v. Colvin*, 543 F. App'x 824, 826-27 (10th Cir. 2013); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013). However, in published opinions, the Tenth Circuit has also required an ALJ to resolve an "inconsistency" between the RFC and moderate limitations in the paragraph B criteria on remand when remanding for a different error, *see Frantz v. Astrue*, 509 F.3d 1299, 1303 n.3 (10th Cir. 2007), and assess the consistency between step three limitations and an RFC when determining whether the latter "adequately account[ed]" for a claimant's memory and concentration defects, *see Vigil*, 805 F.3d at 1203-04.

      Here, at step three, the ALJ determined that Plaintiff has moderate limitations in concentrating, persisting, or maintaining pace, and in interacting with others.[7]  AR at 47. The ALJ's limitation of Plaintiff's RFC to "work that consists of only simple, routine and repetitive tasks," "work that requires no more than frequent fast-paced production work," and "work that requires no more than frequent simple workplace changes," *see* AR at 49, adequately accounts for Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace. *Smith v. Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016) (finding that a plaintiff's moderate limitation in maintaining concentration, persistence, and pace, was accounted for by an RFC that limited the plaintiff to work that involved

---

[7] Plaintiff states that the ALJ also assessed a moderate limitation in "adapting and managing oneself," *see doc. 22* at 23, but the ALJ in fact assessed a mild limitation in that area, *see* AR at 48.

only "simple, repetitive, and routine tasks").  Additionally, the ALJ's limitation of

Plaintiff's RFC to "work that requires no more than occasional interaction with the

public and co-workers, and to work that requires no more than occasional supervision,"

*see* AR at 49, adequately accounts for Plaintiff's moderate limitation in interacting with

others, *see Lee v. Colvin*, 631 F. App'x 538, 541-42 (10th Cir. 2015) (finding that a

plaintiff's moderate limitation in accepting instructions and responding appropriately

to criticism from supervisors and moderate limitation in getting along with coworkers

or peers without distracting them or exhibiting behavioral extremes was adequately

accounted for by an RFC that limited the plaintiff to work with "routine supervision,"

and to relating to supervisors and peers on a "superficial work basis").  Therefore, the

ALJ's mental RFC finding sufficiently incorporates the moderate mental limitations he

found at step three.

     ii.   *Opinion Evidence*

Plaintiff argues that "[t]he ALJ's rejection of portions of Dr. Benson's opinion is

inconsistent with [h]is own finding for moderate limitation in adaption and managing

oneself, [and] the ALJ had no support for calling the doctor's opinion vague, as he used

Social Security's own terms."  *Doc. 22* at 25.  Although the ALJ found Dr. Benson's

opinion generally consistent with, and supported by, the record evidence, the ALJ

found that Dr. Benson's "assessment that the claimant has moderate limitations

responding appropriately to changes in work settings is partially inconsistent with findings of normal intellect and intact thought processes."  AR at 54.  The Court finds no reversible error here, because the ALJ's RFC finding accommodated limitations related to adapting to changes in work settings by limiting Plaintiff to "work that requires no more than frequent simple workplace changes."  AR at 49.  As the RFC contains a more specific limitation regarding Plaintiff's ability to respond to changes in work settings than the one assessed by Dr. Benson, and because Plaintiff does not articulate how assigning greater weight to Dr. Benson's opinion would result in a more restrictive RFC finding, the Court finds that any error made by the ALJ in assigning "some weight" to Dr. Benson's opinion, *see* AR at 54, was harmless, *see Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (stating that "an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity").

Plaintiff also argues that the ALJ should not have relied upon Plaintiff's lack of mental health treatment and reported activities of daily living when finding Dr. Akins's opinion inconsistent with the record, because to do so was to "improperly requir[e] [Plaintiff] to have sought treatment before taking her allegations and evaluations seriously."  *Doc. 22* at 26.  Pursuant to the regulations, the Commissioner considers the consistency of a medical opinion with the record as a whole when determining how

much weight to give that medical opinion.  20 C.F.R. § 404.1527(c)(4); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole.").  Contrary to Plaintiff's argument, a claimant's lack of mental health treatment and daily activities are valid types of evidence in the "record as a whole" with which a medical source's opinion may be found inconsistent.  *See, e.g., Montoya v. Berryhill*, CIV 16-0901 JHR, 2017 WL 5484658, at *7-8 (D.N.M. Nov. 15, 2017); *Guevara v. Astrue*, No. 2:07-CV-835 TS, 2010 WL 964263, at *4 (D. Utah Mar. 15, 2010).  Therefore, the Court finds that the ALJ did not err in evaluating the consistency of Dr. Akins's opinion with this evidence.

Finally, Plaintiff argues that the ALJ improperly "reject[ed] a medical opinion and render[ed] one himself" when he rejected the opinion of a consultative examiner, Dr. McClain, that Plaintiff is unable to stand or walk for at least six hours in an eight-hour workday.  *Doc. 22* at 26.  In rejecting Dr. McClain's opinion that Plaintiff is unable to stand or walk for at least six hours, the ALJ relied on the inconsistency of that finding with various evidence, including (1) "repeated findings that [Plaintiff] maintains full motor strength in her lower extremities with normal coordination and sensation," (2) evidence that Plaintiff's "straight leg raise testing was negative, indicating a lack of radicular symptoms," and (3) treatment notes indicating that Plaintiff "repeatedly

exhibited a normal unassisted gait."  AR at 53-54 (citing AR at 440-47, 471, 490-95, 532-34.

The Court finds that the ALJ did not improperly give a medical opinion in rejecting the portion of Dr. McClain's opinion about Plaintiff's ability to walk and stand for six hours.  The opinion of a consultative examiner is entitled to less deference than that afforded to an opinion of a treating physician.  *See* 20 C.F.R. § 404.1527. [8]  However, opinions of consultative examiners must still be reviewed by ALJs pursuant to the factors set forth in SSA regulations governing medical opinion testimony.  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012); 20 C.F.R. § 404.1527(c).  Every factor is not necessarily applicable in every case, so an ALJ need not address all of them.  But, at a minimum, the ALJ must give reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight" the ALJ gave to that medical opinion and "the reason

---

[8] Effective March 27, 2017, the SSA significantly changed its approach to evaluating medical opinions. The applicable regulation for claims filed before March 27, 2017, is located at 20 C.F.R. § 404.1527, while 20 C.F.R. § 404.1520c applies to claims filed on or after March 27, 2017.  In this case, which results from a disability cessation proceeding rather than an initial disability determination, the parties do not explicitly address whether the Court should use the date of Plaintiff's initial application for benefits or the date she filed a request for reconsideration of the disability cessation decision as the 'claim filed' date for purposes of determining the applicable regulation.  *See Garcia v. Saul*, Case No. 18-cv-2541-BAS-AGS, 2020 WL 4882499, at *8 (S.D. Cal. Aug. 20, 2020) (using the date of the plaintiff's cessation-of-benefits claim); *Hewlett v. Comm'r of Soc. Sec.*, Case No. 6:20-cv-1268-LHP, 2022 WL 846071, at *4 n.7 (M.D. Fla. Mar. 22, 2022) (using the date of the plaintiff's initial application for benefits).  However, because Plaintiff's initial claim for benefits (filed on May 12, 2006, AR at 167) and Plaintiff's request for reconsideration of the disability cessation determination (filed on April 21, 2016, AR at 175) both fall after March 27, 2017, the Court need not decide the issue.

for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).  As discussed, pursuant to 20 C.F.R. § 404.1527(c)(3) and (4), ALJs must evaluate medical opinions and determine their persuasive weight by considering, *inter alia*, whether the medical source "presents relevant evidence to support a medical opinion" and whether the medical opinion is consistent "with the record as a whole."  20 C.F.R. § 404.1527(c)(3)-(4).  While "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability," *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.2007), it is not improper for an ALJ to deviate from portions of a medical opinion when making an RFC finding, *see Chapo*, 682 F.3d at 1288; *see also* 20 C.F.R. § 404.1545 (stating that "[the ALJ] will assess your residual functional capacity based on all of the relevant medical and other evidence").

Here, the ALJ relied on specific evidence in the record when rejecting the portion of Dr. McClain's opinion at issue, specifically, treatment notes from Plaintiff's March 17, 2015, and April 20, 2016, office visits with Dr. Anozie; a July 10, 2013 treatment note from a provider in the New Mexico Department of Health's Medical Cannabis Program; and treatment notes from a March 17, 2018, office visit with Dr. Timothy Moser.  The Court finds that this evidence provides substantial evidence for the ALJ's conclusion that Dr. McClain's finding about Plaintiff's ability to walk or stand for only six hours in a workday is inconsistent with the record.  The Court also finds no indication that the

ALJ improperly made speculative inferences from the evidence that he cited; for instance, Dr. Anozie's and Dr. Moser's treatment notes directly corroborate the ALJ's statement that "most notably, the claimant repeatedly exhibited a normal unassisted gait." *See* AR at 443, 447, 533.  Therefore, the Court finds that the ALJ's rejection of portions of Dr. McClain's medical opinion did not rest on the ALJ's own formulation of an improper medical opinion.

      iii.   *Subjective Symptom Allegations*

Finally, Plaintiff argues that the ALJ failed to properly consider Plaintiff's subjective symptom allegations by relying on reasons for discounting them that "are not supported by the record." *Doc. 22* at 27.  Specifically, Plaintiff asserts that the ALJ's reliance on Plaintiff's general lack of medical treatment since the disability cessation date, Plaintiff's symptoms being kept under control by medical marijuana per treatment notes, negative objective findings, activities of daily living, and Plaintiff's completion of a bachelor's degree through online coursework in 2015 was improper because those reasons are not supported by the record.  *Doc. 22* at 27.  Plaintiff's insistence that these reasons are not supported by the record is perplexing, as the ALJ provided citations to evidence in the record supporting each of these reasons.  *See* AR at 52 (citing AR at 327-44, 367-80, 440-47, 471, 490-97, 517-34).[9]  Plaintiff also argues that the ALJ "failed to

---

[9] The Court also finds that Plaintiff's general lack of treatment since the disability cessation date is not contradicted by the record.  The ALJ found that Plaintiff's disability ceased on April 4, 2016.  AR at 57.

consider of [sic] develop the relevant evidence in the case record" and ignored

probative evidence.  *See doc. 22* at 27.  However, Plaintiff does not indicate any

particular evidence she argues the ALJ failed to consider or develop, or any probative

evidence that she argues the ALJ ignored.  *Id*.  Therefore, she has waived these

arguments.  *See Candelario v. Barnhart*, 166 F. App'x 379, 382 n.2 (10th Cir. 2006) (holding

that an argument set forth in a conclusory manner is waived).

## V.    CONCLUSION

For the foregoing reasons, the Court finds that the ALJ obtained a valid waiver

of Plaintiff's right to representation from Plaintiff, the Appeals Council did not err in

failing to review Plaintiff's case in light of her later-submitted evidence, and the ALJ's

RFC finding is supported by substantial evidence.  Therefore, the Court hereby DENIES

Plaintiff's Motion to Reverse and Remand (*doc. 22*) and AFFIRMS the Commissioner's

decision.

---

Since that date, the record that was before the ALJ reflects that Plaintiff was seen by Dr. Anozie on April 20, 2016, for "chronic major depressive disorder" and "chronic pain," AR at 440; and by a medical provider on May 18, 2016, as part of her enrollment/re-enrollment for the New Mexico Department of Health's Medical Cannabis Program, AR at 461.  Otherwise, the record that was before the ALJ indicates that Plaintiff's only other medical appointments following the disability cessation date were with consultative examiners who saw Plaintiff as part of the continuing disability review process.  As discussed in greater detail in Section IV.B. *supra*, Plaintiff submitted evidence to the Appeals Council indicating that she attended three additional medical appointments in 2019, but that evidence was not before the ALJ.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**